**LOCAL UNION NO. 115, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL–CIO, et al.**

v.

**TOWNSEND AND BOTTUM, INC., et al.**

**Civ. A. No. 72–107.**

United States District Court,
W. D. Pennsylvania.

Nov. 14, 1974.

Richard D. Gilardi, Pittsburgh, Pa., for plaintiffs.

Melvin Schwartz, Pittsburgh, Pa., Arthur M. Recht, Wheeling, W. Va., Ben Paul Jubelirer, Pittsburgh, Pa., Patrick C. O'Donoghue, Washington, D. C., for defendants.

## OPINION, FINDINGS OF FACT, DISCUSSION AND CONCLUSIONS OF LAW

KNOX, District Judge.

In this controversy involving a Local Union No. 115 affiliated with the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO (United Association), brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the court has heard the testimony of the parties, considered the evidence and exhibits and makes the following

## FINDINGS OF FACT

1. Townsend and Bottum, Inc. is a corporation principally engaged in the construction of power plants and undertook the construction of a large power plant on behalf of Pennsylvania Power Company, New Castle, Pennsylvania. The construction of this power plant, known as the Bruce Mansfield Power Plant in Beaver County, Pennsylvania, began on or about the first day of November, 1971. Townsend and Bottum is an employer within the meaning of the Labor Management Relations Act. (Townsend and Bottum, Inc. will hereinafter be referred to as "company".)

2. The company is signatory to an agreement known as the National Construction Agreement by and between the company and the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO, hereinafter referred to as "United Association". The National Construction Agreement was executed on the 16th day of October, 1968, and continued in full force and effect until March 31, 1972, and was renewed thereafter.

3. Local Union No. 115 is affiliated with the United Association and at times relevant to this litigation (October, 1971–February, 1972) was composed of approximately three hundred twenty-five members. Local Union No. 115 is a combination of plumbers and steamfitters and is referred to as a "combination local". The geographical jurisdiction of Local Union No. 115 at all times relevant to this litigation was Beaver County, Pennsylvania.

4. The individual plaintiffs are members of Local Union No. 115.

5. Local Union No. 449 is affiliated with the United Association and at all times relevant during this litigation was composed of approximately 2,000 members. The ordinary geographical jurisdiction of Local 449 is Allegheny County, Pennsylvania. The trade jurisdiction of Local 449 is pipefitting.

6. Local Union No. 27 is affiliated with the United Association and at all times relevant during this litigation was composed of approximately 1,200 members. The ordinary geographical jurisdiction of Local 27 is Allegheny County, Pennsylvania. The trade jurisdiction of Local 27 is plumbing.

7. Local Unions 115, 449 and 27 were governed and bound by the provisions of the United Association constitution at all times relevant to this litigation.

8. On the 13th day of October, 1971, a representative of the company, William Brown, and representatives of several labor unions who were scheduled to perform work on the Bruce Mansfield Plant conducted a pre-job conference during which time William Brown, Vice President of the company, in a general fashion outlined the various work rules which would be established and would prevail during the construction of the Bruce Mansfield Plant, including notification of starting and quitting time, pay periods, coffee breaks and other descriptions of the conduct of the work to be performed.

9. During the pre-job conference the company notified all present, including a representative of Local Union 115, that the company was signatory to the National Construction Agreement and that the company would conduct its employment and labor relations activities in accordance with the National Construction Agreement.

10. During the pre-job conference the company, in accordance with the National Construction Agreement, agreed to pay wages and fringe benefits according to the local agreements and stated it would adhere to local hiring procedures.

11. The pre-job conference conducted on October 13, 1971, was the only meeting, conference or discussion between the company and Local Union No. 115 regarding wages, hours and conditions of work in the construction of the Bruce Mansfield Power Plant. .

12. No written collective bargaining agreement existed during the times relevant to this litigation between the company and Local Union No. 115, except as set forth in the National Construction Agreement.

13. Townsend and Bottum was never a member of the Plumbing and Heating Contractors Association of Beaver County and at no time agreed to be contractually bound by the terms and provisions of the agreement between that Association and the Local Unions.

14. Neither during the pre-job conference of October 13, 1971, nor at any other time, did the company verbally agree or by its conduct assent to be bound by the existing collective bargaining agreement to which Local Union No. 115 was signatory with an association of which company was not a member.

15. No definite terms, or conditions governing wages, hours and conditions of work which would establish a consensual relationship between the company and Local Union No. 115 were developed at any time prior to the 20th day of January, 1972, except as defined by the terms of the National Construction Agreement.

16. No enforceable oral collective bargaining agreement ever existed between Townsend and Bottum, and Local Union No. 115.

17. Local 115 had knowledge of the National Construction Agreement and its provisions at the time of the October 13, 1971, pre-job conference. Local 115 has had previous experience with the National Construction Agreement and has dealt with national contractors like Townsend and Bottum which are parties to said Agreement.

18. The National Construction Agreement between the company and the United Association provides in Article I, paragraph 6, thereof that the company recognizes the United Association as the sole and exclusive bargaining representative for all journeymen and ap-

prentices in the employ of the company with respect to wages, hours and other terms and conditions of employment. The National Construction Agreement further provides in Article VI, paragraph 29, that any questions as to the territorial and United Association trade jurisdiction of a local union, or on "open territory" shall be decided by the United Association. The National Construction Agreement provides in Article VI, paragraph 33, "that any provision of a local collective bargaining agreement contrary to or in conflict with the intent and meaning of this Agreement, shall not be enforced with respect to the company working under the National Construction Agreement."

19. By letter of January 20, 1972, the company and Locals 115, 27 and 449 were notified by the General President of the United Association, Martin J. Ward, that the United Association would assume jurisdiction over the Bruce Mansfield Power Plant at Shippingport, Beaver County, Pennsylvania, and that Local Unions 27 and 449 would act as agents for the United Association on all problems relative to the United Association's jurisdiction on said project.

20. Townsend and Bottum, being a party to the National Construction Agreement, was required to adhere to the decision of the United Association as contained in its letter of January 20, 1972, to change the territorial jurisdiction from Local Union 115 to Local Unions 49 and 227.

21. Townsend and Bottum did not induce the United Association to change the territorial jurisdiction from Local Union 115 to Local Unions 49 and 227.

## DISCUSSION

■ This suit is brought under Section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185)[1] which confers upon the United States District Court jurisdiction of suits between an employer and a union for violation of contracts. Plaintiff claims that it has a binding and subsisting contract with the company, the general contractor on this alleged construction project in Beaver County, Pennsylvania. The mere allegation of the agreement by the plaintiff is sufficient to confer jurisdiction on this court to decide the controversy. See Local No. 59, Sheet Metal Workers v. J. E. Workman, Inc., 343 F. Supp. 480 (D.Del.1972).

■■ The fact that the alleged agreement is not a formal collective bargaining agreement such as we usually find in suits under this Section does not deprive the court of jurisdiction. The Act covers any agreement, written or unwritten, formal or informal, which purports to resolve employment controversies between contractors and unions. See Retail Clerks v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed. 2d 503 (1961); Smith v. Pittsburgh Gage and Supply Co., 464 F.2d 870 (3d Cir. 1972).

■ The fact that the National Construction Agreement to which Townsend and Bottum, Inc. is a signatory and by the terms of which plaintiff is bound, as will be demonstrated hereafter, provides for arbitration does not prevent this court under the circumstances of this case from deciding the controversy. In Smith v. Pittsburgh Gage and Supply Co., supra, the Third Circuit enumerated certain exceptions to the rule that the parties must use the grievance procedures contained in their contract before resorting to the judicial process as follows:

"(1) employer repudiation of the contract and the attendant dispute settlement procedure; (2) arbitrary refusal or perfunctory handling of a griev-

1. "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

ance by a union; and (3) circumstances which would make arbitration futile." Smith v. Pittsburgh Gage and Supply Co., supra.

In the instant case, provision is made in Article XX of the National Construction Agreement for grievance procedures but we determine that in this case arbitration would be futile since the dispute here results from the International Union removing plaintiff Local from the project. The union constitution of the United Association gives the International Union the power to decide all matters pertaining to trade and territorial jurisdiction of its affiliated local unions of which plaintiff is one. We therefore determine that in this case grievance procedures would be futile since the action of the United Association would be sufficient defense before the arbitrator.

■ We have, however, required the Local in proceeding with this case to exhaust its remedies within the United Association. This the Local did by appealing to the General President of the United Association and thence to the General Executive Board as provided by the Constitution of the United Association. After hearing, the General Executive Board requested the General President to review the matter but nothing has resulted from this action, and we therefore find the union has done everything within its power to exhaust its remedies within the International Union.

■ Turning to the merits of the case we determine, however, that any contract which the plaintiff may have had with the company even if one existed was subject in all respects to decision of jurisdictional questions by the United Association. Local 115 argues that it is not a signatory to the National Agreement which was entered into between large national contractors and various international unions including this United Association. This being so and since Local 115 admittedly is a member of the United Association and bound by its Constitution and rules, it has taken no steps to disaffiliate itself therefrom and it is certainly true that it is bound by the provisions of the national agreement. See Roadway Express, Inc. v. General Teamsters, 330 F.2d 859 (3d Cir. 1964); United States Steel Corp. v. United Mine Workers of America, 320 F.Supp. 743 (W.D.Pa.1970). See also Section 97 of the United Association Constitution relative to trusteeship.

■ Plaintiffs' rights, if any, must depend upon what was said during a pre-job conference which occurred on October 13, 1971, between a representative of the company and representatives of several labor unions with reference to work on the Bruce Mansfield Power Project. At this time, we find that the company notified the local unions including plaintiff that the company was signatory to the National Construction Agreement and would conduct its employment and labor relation activities in accordance with that agreement. No definite terms or conditions governing wages, hours and conditions of work were agreed upon other than those set forth in the national contract. All the employer's representative said was that they would draw their employees from the union hiring hall and would recognize all local unions in the area which were chartered to perform the work.

We find that there was no enforceable agreement to recognize Local 115 as the local union to supply all plumbers and pipe fitters for this very large project in all events, regardless of displacement by the international of which it was a member. There would be no reason for Townsend and Bottum, a large national contractor, entering into such an agreement which would be in violation of its obligations under the national contracts. All that Townsend and Bottum committed themselves to was a statement that they would recognize the local unions having jurisdiction in the Beaver County area. By virtue of the order of the United Association this jurisdiction has been taken from Local 115 insofar as this project is concerned and vested in Locals 449 and 27.

■ There is no material disagreement among the parties present at this pre-job conference as to what was said with respect to this matter. At the time in question, Townsend and Bottum obviously was attempting to establish a good working relationship with the local unions having jurisdiction in the area and had no intention of entering into an agreement which would obviously be a violation of its national contractual obligations and which would only get it into trouble and, as has been suggested in this case, into the middle of a controversy between a local and its international. The fact that various members signed authorizations for dues check offs and these were recognized by the contractor would certainly not add to a contract which otherwise did not exist or if it did exist was a contract only to recognize the local having jurisdiction on the project. In other words, if there was an enforceable contract at all between Townsend and Bottum and Local 115 it was subject to the implied condition that it would exist only so long as Local 115 had jurisdiction of this project under the Constitution and rules and orders of its International Union, the United Association. Once Local 115 was displaced by its International Union, any contract between it and Townsend and Bottum, Inc. would no longer be in force and effect, and therefore the action must be dismissed.

We recognize that this decision may result in approval of a power play whereby a small local ordinarily having jurisdiction of a large project was displaced by larger locals having jurisdiction of an adjacent metropolitan county. Nevertheless, if this local wishes to continue its affiliation with its international union, it must abide the consequences.

## CONCLUSIONS OF LAW

1. The National Construction Agreement creates a contractual relationship between the company and the United Association, and as a result of the union structure the National Construction Agreement binds the various affiliated local unions, including Local Union No. 115, to its terms and conditions, including the provision which vests in the United Association the right to determine questions regarding territorial jurisdiction.

■ 2. That the provision in the National Construction Agreement regarding the right to change territorial jurisdiction was vested exclusively in the United Association, so that any decision regarding territorial jurisdiction would be enforceable against the company and the company had the contractual obligation to accede to any territorial change imposed by the United Association.

3. That any agreement either written or verbal regarding an employment relationship between the company and Local Union No. 115 must be considered within the scope and meaning of other agreements including the National Construction Agreement as well as practices, usage and custom pertaining to such agreements.

4. No contractual employment relationship existed between the company and Local Union No. 115 which would obligate the company to recognize Local Union No. 115 as the exclusive bargaining agent for plumbers and steamfitters on the Bruce Mansfield Power Plant project.

## ORDER

And now, to wit, November 14, 1974, the court having fully heard the testimony submitted on behalf of both parties and considered the briefs and arguments of the parties, for reasons set forth in the foregoing memorandum opinion, findings of fact, discussion and conclusions of law,

It is ordered that this action be dismissed and judgment is hereby entered in favor of the defendants and against the plaintiffs.