OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF the UNITED STATES AND CANADA, LOCAL 202, AFL–CIO, and Plastering Industry Local 202 Welfare Fund, Plaintiffs,

v.

METROPOLITAN NEW YORK DRY WALL CONTRACTORS ASSOCIATION, INC., et al., Defendants.

No. 81 CV 2893.

United States District Court, E. D. New York.

July 7, 1982.

Hermann, Kreisberg & Woodrow by Jeffrey L. Kreisberg, Great Neck, N. Y., for plaintiffs.

Cohen Weiss & Simon by Michael E. Abram, New York City (O'Donoghue & O'Donoghue, by Donald J. Capuano, and Robert Matisoff, Washington, D. C., of counsel), for defendant Operative Plasterers' and Cement Masons' Intern. Ass'n of the U. S. and Canada, AFL–CIO.

Avram H. Schreiber, New York City, for Metropolitan New York Dry Wall Contractors Ass'n, Inc., and designated contractors.

Levin & Weissman, P. C. by Roger M. Levin, New York City, for defendants Local 530 and Local 530 Welfare Fund.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

In this action based upon a union jurisdictional dispute, plaintiff Local 202 and its welfare fund sue another union, Local 530, and its welfare fund, which have supplanted Local 202's former jurisdiction over drywall plastering in the metropolitan area. Also joined as defendants are the international labor organization ("International"), with which both Locals 202 and 530 are affiliated, and which is responsible for the change in jurisdiction; the Metropolitan New York Dry Wall Contractors Association ("Metropolitan"), an employers' bargaining association which has agreements with both Local 202 and Local 530 covering drywall plastering; and the individual

members of Metropolitan. The action is an offshoot of a complex jurisdictional battle between Local 202 and the painters' unions regarding the performance of drywall plastering work. With the exception of some individual employers, members of Metropolitan, who have not yet appeared, defendants have all moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Rule 12(b)(1), 12(b)(6), F.R.Civ.P. Because affidavits and other materials outside the pleadings have been submitted by the parties, the Court has treated the motions was ripe for summary judgment under Rule 56. For the following reasons, the defendants' motions are granted and the action is dismissed.

The relevant and material facts underlying this lawsuit are not in dispute. In 1974, Local 202 and two other plasterers' locals, not parties here, entered into a specialty agreement with Metropolitan which recognized that the three locals had exclusive jurisdiction in their geographic areas (the five counties within New York City and Nassau and Suffolk Counties) to perform the "pointing, taping and filling of joints on drywall surfaces, that are to receive these finishes and/or any other decorative wall finishes." In 1975 the plasterers' and painters' unions began to dispute which of them had jurisdiction over pointing and taping work performed with new nonadhesive compounds that could not definitively be classified as plaster material based upon their composition. After protracted internal union proceedings and the commencement of federal litigation, a national Hearings Panel of the AFL–CIO ruled in March 1978 that regardless of the material used, pointing and taping was painters' work if the drywall surfaces were not to receive plaster or other finishes, but if the surfaces were to receive such finishes, then the work belonged to the plasterers. On the central issue, use of the new compounds, the Hearings Panel also ruled that if the same pointing material was applied to the entire drywall surface "for the purpose of producing a uniform surface compatible with the pointed and taped joints," the surface pro-

duced "shall be considered a plaster finish." Levin Aff., Exh. I at 33. This confirmed that the work covered by the 1974 specialty agreement between Metropolitan and Locals 202, 60 and 852 belonged to the plasterers. Nevertheless, jurisdictional disputes between the painters and plasterers over application of this ruling continued. See Levin Aff., ¶¶ 43–61.

The operative events with which this lawsuit is concerned occurred after the Hearings Panel issued its jurisdictional ruling. Responding to renewed pressure by the painters' union, undermining the Hearings Panel's decision, the general officers of the International determined that a new local union, Local 530, should be created with its jurisdiction limited to drywall plastering in the geographic territory covered by Local Unions 202, 60 and 852. John Powers, then the General President of the International, announced this plan to representatives of the three locals in a meeting in July 1978. The locals' representatives expressed approval of the plan, although Local 202's president, Carmine Marotta, insists his understanding was that the changes would not affect existing jurisdiction or contracts. The General Executive Board of the International voted to approve a temporary charter for Local 530 on September 6, 1978, whereupon Local 530 entered into a collective bargaining agreement with Metropolitan covering the same work that was the subject of the 1974 specialty agreement between Metropolitan and Local Unions 202, 852 and 60.

In November 1978 Powers sent Marotta, Local 202's business agent, a copy of a letter he had written the preceding day to Michael Canuso, a vice-president of the International and business agent of Local 852, and at times a president of Local 530, delineating the territorial and work jurisdiction of the new Local 530. Metropolitan's executive director sent copies of the same letter to all of Metropolitan's members, describing it as "self-explanatory." This was followed at the end of November 1978 by a letter from counsel for Local 530's welfare fund notifying Metropolitan's members that as of

September 6, 1978, benefit contributions were owed to Local 530's fund with respect to any member of a local who performed drywall plastering work within Local 530's jurisdiction. Effective October 1, 1978, the welfare and benefit funds of Local 530 and Local 202 entered into an agreement ("reciprocal agreement") pursuant to which each fund agreed to transmit to the other all fringe benefit payments received by that fund on behalf of employees temporarily working in its geographical jurisdiction but who were customarily and primarily represented by the other local union.

As recounted in the amended complaint, these events and relationships give rise to five claims. The first, against Metropolitan and its members, is for breach of the 1974 specialty agreement, which plaintiff alleges was extended in 1977 until at least November 1980. As amended in 1977, this agreement provided for payment of dues check-offs to the local union of which the employee performing the work was a member, rather than to the local union having geographical jurisdiction of the work. Apparently most of those performing drywall plastering at this time were members of Local 202. In addition, fringe benefit contributions were also payable to the appropriate welfare fund of the local union of which the employee performing the work was a member. Since September 1978 Metropolitan's members have paid amounts owing with respect to drywall plastering not to the plaintiffs but to Local 530 and its benefit fund. The first claim accordingly seeks damages for breach of contract in the amounts of the dues check-offs not paid to Local 202 and the fringe benefit contributions not paid to Local 202's fund, for the period September 1978 through at least November 1980.

The second claim against the International, Local 530 and the defendant Moscatiello, its current president, alleges that these defendants wrongfully interfered with plaintiffs' contractual rights with Metropolitan and its members under the 1974 specialty agreement, as extended. As damages plaintiffs seek recovery of the dues check-offs and fringe benefit contributions not paid to them.

The third claim charges all defendants with conspiracy to do the acts of which plaintiffs complain. The fourth and fifth claims are against Local 530 and its welfare and insurance fund for breach of the reciprocal agreement in not transferring to Local 202 the drywall plastering fringe benefit contributions allegedly owed, with the amount of such untransferred contributions claimed as damages, and for restitution of the same sums. Jurisdiction to entertain such claims is invoked under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a); § 502(e)(1) of the Employee Retirement Security Act, 29 U.S.C. § 1132(e)(1), and the doctrine of pendent jurisdiction.

In urging dismissal of this suit, defendants argue first that Local 202 has not exhausted internal union or contractual grievance mechanisms with respect to the claimed breaches of contract by Metropolitan, and for the claimed unlawful interference by International and Local 530 with Local 202's contractual relations with Metropolitan. More fundamentally, International argues that no claim for contractual interference can be stated against it because the constitution binding it, Local 202 and Local 530 authorized the actions taken. By extension, a determination in International's favor on this point would remove all basis for plaintiffs' suit. Metropolitan argues also, and it is expressly joined in this by Local 530, that the intra-union nature of the dispute precludes all judicial intervention. This latter challenge, which Metropolitan has framed as going to subject matter jurisdiction, as well as other questions of jurisdiction, must be considered first.

■ Section 301(a) of the LMRA confers upon the federal district courts jurisdiction over "suits for violation of contracts ... between any ... labor organizations [representing employees in an industry affecting commerce]" as defined in § 2 of the Act. 29 U.S.C. § 185(a). Recently, the Supreme Court upheld federal jurisdiction over a suit brought by a local union against its parent

international union alleging a violation of the union constitution in ordering consolidation of several local unions, including the plaintiff, confirming that a union constitution can be a contract between labor organizations within the meaning of § 301(a), as this circuit has previously held, *e. g., Santos v. District Council of New York City and Vicinity of United Brotherhood of Carpenters and Joiners of America, AFL–CIO,* 547 F.2d 197, 199 n.1 (2d Cir. 1977); *see also Drywall Tapers, Local 1975 v. Operative Plasterers' International Association,* 537 F.2d 669, 672–73 (2d Cir. 1976). *United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO v. Local 334, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981). Moreover, the Court ruled that it was unnecessary for § 301(a) jurisdiction that the dispute between local and parent unions involve events which potentially have a significant impact on labor-management relations or industrial peace. 452 U.S. at 623–25, 101 S.Ct. at 2551. "[I]t is far too late in the day to deny that Congress intended the Federal Courts to enjoy wide ranging authority to enforce labor contracts under § 301." *Id.* at 627, 101 S.Ct. at 2553. Accordingly, Metropolitan's contention that jurisdiction is barred because this lawsuit is fundamentally an internal union dispute must be rejected.

■ Subject matter jurisdiction exists over Local 202's claim against the International for wrongful interference with Local 202's contract, since this claim is based upon the International's alleged violation of its constitution. Although Metropolitan further argues that the International's action rendered the specialty agreement null and void, by stripping Local 202 of jurisdiction over union members performing the work described in that agreement, and that therefore no contract exists between Local 202 and an employer as § 301(a) requires, subject matter jurisdiction cannot seriously be challenged over plaintiffs' claims resting

upon breach of the 1974 specialty agreement. Metropolitan's argument assumes the merits of the suit have been concluded in its favor. For jurisdictional purposes, it is sufficient that plaintiffs allege that such a contract existed and that it was breached. See, *e. g., Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241–45, 82 S.Ct. 1318, 1320–22, 8 L.Ed.2d 462 (1962); *Genesco, Inc. v. Joint Council 13, United Shoe Workers of America,* 341 F.2d 482, 484 (2d Cir. 1965). It is thus unnecessary to determine whether the present plaintiffs are entitled to sue Metropolitan under § 502(e)(1) of ERISA to collect allegedly unpaid benefit contributions.

■ Jurisdiction over the remaining claims, for conspiracy, restitution and breach of the reciprocal agreement, and for the claims against Local 530 and its president Moscatiello for interfering with plaintiffs' contract, may be exercised under the doctrine of pendent jurisdiction, since these claims clearly arise from the same nexus of operative facts as the federal claims.

■ The ground for dismissal principally relied upon by Metropolitan and Local 530, and also by the International albeit with less vigor, is that Local 202 has not exhausted the grievance procedures available to it under its specialty agreement with Metropolitan and the International constitution. As Metropolitan points out, it is well established that parties to a collective bargaining agreement must resort to any available non-judicial grievance procedures provided in their agreement before litigating their claims in federal court. *E.g., Local 33, International Hod Carriers' Building, and Common Laborers' Union of America v. Mason Tenders District Council of Greater New York,* 291 F.2d 496, 498–500 (2d Cir. 1961).

The 1974 specialty agreement provided in Article 6 that "in the event of a dispute arising out of the interpretation of the Agreement" the parties would use the grievance procedures outlined in their agreement. These included, at step two, a grievance committee specifically "empowered to hear and decide all grievances and

disputes which arise between the parties as to the interpretation or application of the agreement." Decisions of the committee were made "final and binding" but in cases of deadlock or other failure to reach a decision, the agreement provided that the parties "may" pursue remedies before a National Joint Grievance Committee.

Local 202 first seeks to excuse its admitted non-exhaustion of contract remedies by arguing that the grievance process contemplated by the specialty agreement does not encompass the present dispute between it and Metropolitan. This dispute is essentially whether in light of the International's vesting of drywall jurisdiction in Local 530, the 1974 specialty agreement any longer applies to drywall work performed by International members who are also members of Local 202. In Local 202's view, its dispute with Metropolitan arises from the latter's repudiation of the agreement based upon the International's action, and not from any dispute arising out of the interpretation of the contract itself, and thus need not be submitted to grievance procedures.

The guiding principles in this area are set forth in *Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 605 F.2d 1290, 1294–95 (2d Cir. 1979), where the court pointed out:

> "There is no general duty to submit labor disputes to arbitration. Rather, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 [80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409] (1960). Thus, whether or not a party is bound to arbitrate a given issue is a matter to be determined 'on the basis of the contract entered into by the parties.' *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241 [82 S.Ct. 1318, 1320, 8 L.Ed.2d 462] (1962)." 605 F.2d at 1294.

In determining whether the parties have agreed to resolve a particular dispute through contractually arranged grievance procedures,

> "a court must be ever mindful of the strong national policy favoring arbitration of labor disputes .... Arbitration clauses are to be construed broadly, and there is 'a strong presumption favoring arbitrability.' *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union,* 430 U.S. 243, 254 [97 S.Ct. 1067, 1073, 51 L.Ed.2d 300] (1977). The application of this policy is clearest when a party asserts that a particular claim falls outside the scope of an arbitration clause. In such cases,
>
> > [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.
>
> *Steelworkers v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 582–83 [80 S.Ct. at 1352–53]." 605 F.2d at 1295.

In the present case the parties agreed that their contemplated grievance procedures would be used for disputes "arising out of the interpretation of this Agreement." Generally, interpretation signifies the process of determining the ideas that are engendered by particular language. Professor Corbin accordingly suggests that by the phrase "interpreting a contract" is "certainly meant interpreting the words of a contract," in distinction to construing a contract, once interpreted, to determine its legal operation. 3 Corbin on Contracts, § 534 at 8–9 (1960).

The range of disputes covered by an agreement like the one at bar clearly is narrower than that covered by an agreement to resolve any and all disputes between the parties to a contract. Compare, e.g., *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International, AFL–CIO,* 370 U.S. 254, 260–63, 82 S.Ct. 1346, 1350–51, 8 L.Ed.2d 474 (1962) (arbitration required for "all complaints, disputes or grievances arising between [the parties] involving questions of interpretation or application of any clause

or matter covered by this contract or any act or conduct or relation between the parties . . . directly or indirectly"). *Cf. Rochdale Village v. Public Service Employees, supra,* 605 F.2d at 1295–96 (question of contract termination arbitrable if arbitration clause involves "interpretation" of the contract and "termination is alleged to have occurred on a basis implicit in the contract") (citation omitted).

■ Accordingly, the Court finds that the present dispute between Metropolitan and Local 202 is not one the parties agreed to seek to resolve first through grievance procedures.

Local 530 and International also argue that the principle of exhaustion requires dismissal of Local 202's suit at this time. They both refer to Sec. 72(b) of the International constitution, which provides that

"when any dispute or grievance arises between two or more Local Unions of the O. P. & C. M. I. A., or between the International Association and any subordinate Local Union, such dispute shall be submitted to the General Executive Board for its consideration, final decision and disposition in accordance with the provisions of Section 18(e) herein, the decision and disposition of the dispute by the Board being appealable to the next Convention [of the International Association]."

Any appeal made to and considered by the Convention is "final, from which there shall be no further appeal." The International and the two local unions are bound to this remedial scheme by Sec. 74 of the constitution, which provides that:

"All officers, representatives or members of the O. P. & C. M. I. A. or its Local Unions . . . shall fully exhaust all remedies provided for within this Constitution pertaining to this organization or its Local Unions or their membership or their officers and shall not resort to court or administrative proceedings of any description until all remedies provided for herein are fully exhausted."

Local 202 has submitted its jurisdictional dispute and attendant claims of bad faith

motivation and unlawful action to the General Executive Board. In a Report and Recommendation approved in February 1981 and forwarded to Local 202 in March 1981 (Exh. Z to Amend. Compl.), that body ruled there was no merit to Local 202's grievances against either Local 530 or the International. In brief, the grounds for the decision were that the consistent interpretation of the constitution authorized the International and its president to establish new unions such as Local 530 and assign them territorial and work jurisdictions even if this divested an existing local union of the same jurisdiction. The Board also ruled that the decisions with respect to Local 202 and 530 were a lawful exercise of the Board's power under the constitution because they were made in the best interests of the International Association.

Local 202 has not appealed the February 1981 decision of the Board to the Convention of the International Association. That quadrennial convocation is not scheduled to recur until August 1984, almost 2½ years after Local 202 learned of the Board's decision. Local 202 argues that it is not required to pursue this remaining internal remedy, relying upon the length of time involved before the appeal can be heard, the asserted fact that appeals to the Convention are "rubber-stamped," and upon the alleged bad faith and unconstitutional actions of the International, in part the subject of this lawsuit, which render further internal remedies futile.

While candidly recognizing that courts frequently have excused the exhaustion requirement where extensive delay in resolution of the dispute would result, the International distinguishes such cases as involving vindication of a personal, individual right granted a union member under the Landrum-Griffin Act, 29 U.S.C. § 401 *et seq.* (LMRDA), or the duty of fair representation. In the International's view, the union remains the appropriate and primary forum to determine an intra-union jurisdictional dispute.

In several cases directly on point, however, the fact that the plaintiff whose rights were at stake was the local union and not an individual member has made no difference in excusing non-exhaustion. See, e.g., *Local 1219, United Brotherhood of Carpenters and Joiners of America v. United Brotherhood of Carpenters and Joiners of America*, 493 F.2d 93, 95 (1st Cir. 1974) (exhaustion not required where delay of over three years before next convention); *Parks v. International Brotherhood of Electrical Workers*, 314 F.2d 886, 924–25 (4th Cir. 1963), aff'g on this point, 203 F.Supp. 288, 294–95 (D.Md.1962) (looking to four-month requirement of LMRDA § 101(a)(4) as "authoritative expression of Congressional labor policy" and "prime source" for formulating federal law for exhaustion); *Truck Drivers, Chauffeurs, and Helpers Union, Local 42 v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 482 F.Supp. 266, 272 (D.Mass.1979) (four-year wait until next convention).

■ In this case Local 202 must wait more than two years before its internal union remedies can be fully exhausted. This would be an unreasonable delay in adjudicating its rights, hence the complaint cannot be dismissed for failure to exhaust internal remedies.

Attacking the substance of plaintiffs' claims, Metropolitan next argues that the vesting of drywall jurisdiction in Local 530 perforce rendered the contract between Metropolitan and Local Unions 202, 60 and 852 null and void since those unions no longer had drywall plastering jurisdiction, and that without a valid contract, plaintiff fails to state a claim on which relief can be granted. The International argues that the claims against it for interfering with Local 202's contractual relations with Metropolitan do not state a claim because the provisions of the constitution permitted it to take the actions it did. Local 530 and Moscatiello also look to the nullifying of the Specialty Agreement to excuse their actions with respect to the reciprocal agreements, and implicitly rely on the International's actions to defeat the claim of contract interference against them.

The crux of this case is the lawfulness of the actions taken by the International in vesting drywall jurisdiction in Local 530 and removing it from Locals 202, 852 and 60. If that action is upheld, plaintiffs must fail in their claims against Metropolitan for breach of the specialty agreement, and against Local 530 and its welfare fund for breach of the reciprocal agreement and for restitution, since these claims rest upon the continued existence of an obligation (contractual or otherwise) between Local 202 and Metropolitan covering drywall plastering. As will become clear, a decision upholding the International's actions also obviates plaintiffs' claim for interference with contractual relations.

There is no factual dispute about the terms of the International constitution. Section 22 of that document, on which defendants specifically rely, provides that:

"Local Unions may and shall be organized and chartered at the discretion of the General Executive Board. The General Executive Board shall also have the power to designate such newly chartered Local Unions as being representative of only one primary classification, or more than one primary classification. The General Executive Board shall also have the authority to change the designation of any existing Local Union where the best interests of the International Association indicates that such changes in designation be made."

Other provisions recognize the control that the General President may exercise over local unions affiliated with the International, alone or in conjunction with the General Executive Board. If it is disputed, a local union's exercise of jurisdiction in a given territory is subject to the General President's decision whether that jurisdiction should continue. Sec. 12(w). He may consolidate two or more local unions, and enforce the consolidation of the resulting territory into one or more local unions, "[w]henever" in his judgment, after a thorough examination, "it would be for the best

interest of the O. P. & C. M. I. A., locally or at large." Sec. 12(v). More broadly, the president has "authority to organize or cause to be organized, local unions wherever practical and as in his judgment may be necessary." Sec. 12(e). Furthermore, the General Executive Board is required to act to protect the International's trade jurisdiction when a local union has inadequate manpower to protect that jurisdiction in a given territory.

"Whenever and wherever any Local Union chartered by the O. P. & C. M. I. A. has not included in the membership of said Local Union, a sufficient number of the men working within the trade boundaries assigned it by the O. P. & C. M. I. A., it shall be incumbent upon the General Executive Board of the O. P. & C. M. I. A. after due consideration, to proceed at once to take whatever action is necessary to organize those men. Charters may be granted to groups of such men with the approval of the General Executive Board." Sec. 24.

 Plaintiffs' primary argument is that the International could not, in accordance with the constitution, vest jurisdiction over drywall plastering in Local 530 and withdraw it from Locals 60, 852 and 202 where doing so would interfere with existing contracts of these local unions. However unfair or ill-advised the International's decision may seem from plaintiffs' perspective, there is no merit to this argument. Nowhere in terms does the constitution limit the International's power to act to instances when no contract of the local unions involved would be affected. Nor has Local 202, a member of the International since 1863, adduced any evidentiary matter regarding interpretation of the constitution that would offset the lack of a specific limitation disclosed by the language of the constitution itself. Moreover, plaintiffs have not demonstrated that the International's interpretation of the constitution is unreasonable, and in these circumstances this Court should not disturb the International's "consistent" interpretation. See *English v. Cunningham*, 282 F.2d 848, 850 (D.C.Cir.1960).

The reservation of power over local union jurisdictional matters, recognized by the International constitution, is "commonplace rather than novel in American trade unions; it . . . is found in a number of international union constitutions as part of the quid pro quo of affiliation of the local union with the parent body." *Booth v. Carlough*, 79 Lab. Cas. (CCH) ¶ 11,816 at 22,724 (C.D.Calif. 1975). A case on point is *Local Union No. 115, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO v. Townsend and Bottum, Inc.*, 383 F.Supp. 1339 (W.D.Pa.1974), aff'd mem., 521 F.2d 1399 (3d Cir. 1975). The court there rendered judgment for a contractor defendant in a suit for breach of a collective bargaining agreement brought by a local union whose international parent had awarded union jurisdiction over the defendant's project to two other local unions. Although the facts also indicated that plaintiff and defendant did not enter into a contract, the court ruled that

"if there was an enforceable contract at all between Townsend and Bottum and Local 115 it was subject to the implied condition that it would exist only so long as Local 115 had jurisdiction of this project under the Constitution and rules and orders of its International Union, the United Association. Once Local 115 was displaced by its International Union, any contract between it and Townsend and Bottum Inc. would no longer be in force and effect and therefore the action must be dismissed." 383 F.Supp. at 1345.

 The careful disassociation of the International from the contracts and collective bargaining agreements of its local unions contained in sec. 89, on which plaintiffs rely, cannot reasonably be construed to limit the power of the International in designating the jurisdiction of its affiliate locals. Section 89 is addressed to the wholly separate and legitimate concern of the International not to be held liable for its affiliates' wrongs. Very plainly, the only express limitations on the General Executive Board's

and General President's powers under the foregoing provisions is that "the best interests" of the International "indicate" the need for a change in designation.

By the affidavit of its president and business manager, Carmine Marotta, Local 202 seeks to create an issue of fact as to whether the International acted in bad faith in withdrawing jurisdiction from the three local unions and vesting it in Local 530. Local 202 contends that the decision was the result of an agreement reached between unspecified officials in the International, Local 530 and Metropolitan to advance their own personal and business interests rather than the interests of the membership. President Marotta argues that Local 202 furnished enough men to do the available work, and had more men doing drywall work than Local 530 has doing it now.

These factual arguments are advanced to meet the affidavit of the International's current General President Roots, who succeeded to the office after the death of Powers in 1981. President Roots affirms that faced with evidence of the painters' union's attempts to narrow the decision of the national Hearings Panel, see Levin Aff., *supra*, the International's general officers believed that action had to be taken to change the local union structure to meet the anticipated protracted struggle. Under the existing structure jurisdiction was shared among the three local unions (202, 852 and 60) having geographic jurisdiction over the five counties in New York City and Nassau and Suffolk Counties, although it is undisputed that the bulk of the workers came from Local 202. The general officers believed this system was less efficient and effective than one of centralized representation for a new and specialized branch of the plastering trade. The officers believed further that one local union with exclusive jurisdiction limited to drywall work would be more aggressive in organizing drywall contractors, and more likely to protect the International's newly expanded trade jurisdiction from incursion by the painters' unions than the three geographically distinct local unions, the majority of whose membership performed work other than drywall

plastering, about which, in consequence, they would be less concerned.

 Local 202's president Marotta has failed to create a genuine issue of material fact with respect to president Roots' affidavit. In his affidavit submitted in opposition to the motions of Local 530 and Metropolitan, incorporated by reference in his affidavit opposing the International's motion, Marotta states that Local 202 had more than 200 men performing drywall plastering work, but this clearly is far less than Local 530's current membership in excess of 300. The undisputed increase in union drywall membership cannot reasonably permit the inference of bad faith suggested by Local 202's argument that the International's interests were better served by the old arrangement.

Furthermore, what is critical is that the general officers of the International believed, at the time they acted, that the best interests of the International would be served by consolidating jurisdiction over drywall plastering in the manner they did. The record affords no basis for an inference that this unchallenged belief of the general officers was unreasonable. In sum, Local 202 has pointed to nothing in the arrangements complained of that permits an inference of bad faith on the part of the International, beyond the unavoidable consequence that the interests of some were benefited and those of others disadvantaged, and the erroneous assertion that the International acted without authority. Those effects are insufficient to create a triable issue, and the Court accordingly concludes that the International's action was lawful and must be upheld.

 As suggested previously, this determination necessarily removes any basis for holding the International liable for interfering with Local 202's contract with Metropolitan. Under New York law, which furnishes the guiding principles on this claim, plaintiffs must establish that the International acted without reasonable excuse or justification. See *Campbell v. Gates*, 236 N.Y. 457, 460, 141 N.E. 914 (1923); *Special*

*Event Entertainment v. Rockefeller Center, Inc.*, 458 F.Supp. 72, 78 (S.D.N.Y.1978). Because the facts are undisputed that the International had both the power and reason for exercising it, the claims against it based on contract interference must be dismissed. The International's constitution gave the International a contract right superior to that enjoyed by its local unions in entering into collective bargaining agreements. See *Plumbers and Pipefitters, Local 115 v. Townsend and Bottum, Inc.,* supra. Under the principles of New York law applicable to this case the actions of the International were clearly permissible. See *Felsen v. Sol Cafe Manufacturing Corp.*, 24 N.Y.2d 682, 687, 301 N.Y.S.2d 610, 613, 249 N.E.2d 459 (1969), where the court stated that " 'Procuring the breach of a contract in the exercise of an equal or superior right is acting with just cause or excuse, and is justification for what would otherwise be an actionable wrong.' " (Citation omitted.) By a parity of reasoning, Local 530, its fund and its president cannot be held liable for asserted acts of contract interference with respect to the Specialty Agreement, once the International vested drywall jurisdiction in the new local and removed it from Local 202.

The remaining claim for conspiracy must be dismissed because there is no substantive cause of action for conspiracy under either federal labor law, see *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1254 (2d Cir. 1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), or New York law, see, *e.g., Routsis v. Swanson*, 26 A.D.2d 67, 270 N.Y.S.2d 908, 913 (1st Dep't 1966), and because the object of the conspiracy was a lawful and not an unlawful act, and it is clear the sole purpose of the acts was not to injure plaintiffs. See *id.*

Accordingly, judgment dismissing the complaint in its entirety is granted in favor of the defendants.

SO ORDERED.