575 F.Supp. 646 (1983)
Dominick MANDAGLIO and Charles Ferrera, Plaintiffs,
v.
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA (GENERAL EXECUTIVE BOARD), New York City District Council of United Brotherhood of Carpenters and Joiners (Executive Board), Local Union 385 of United Brotherhood of Carpenters and Joiners of America, Theodore Maritas, Joseph Lia, Frank Calciano, Marcello Svedese, Joseph Mommanna, Clinton Zeh, and Joseph LoCurto, Jr., Defendants.
No. 81 CV 2521 (ERN).
United States District Court, E.D. New York.
November 23, 1983.
*647 Martin S. Streit, New York City, for plaintiffs.
Richard H. Markowitz, New York City, for United Broth. of Carpenters and Joiners of America and Joseph Lia.
Bart & Lew, New York City, for other defendants.

MEMORANDUM AND ORDER
NEAHER, District Judge.
Plaintiffs are former members of the United Brotherhood of Joiners and Carpenters of America ("international union"), located in Washington, D.C., the New York City District Council of the international union ("district council"), and Local 385, both located in New York City. Until the acts complained of, plaintiff Mandaglio was the elected president and business representative *648 of Local 385 and Ferrara was its financial secretary. The basic wrong of which they complain is that they were removed from their positions and membership in the above organizations in violation of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 411(a) and 529, pursuant to which this Court's subject matter jurisdiction has been invoked. See id., 29 U.S.C. §§ 412, 529.
The complaint raises five causes of action all premised upon an alleged conspiracy between and among the defendants which succeeded in its alleged ultimate goal of removing plaintiffs from the union. The case is before the Court upon defendants' motion for summary judgment upon all counts.

I.
Undoubtedly cognizant of the rule in this circuit that 29 U.S.C. § 411(a)(5) does not confer jurisdiction to review internal union removals from office, Schonfeld v. Penza, 477 F.2d 899, 904 (2d Cir.1973),[1] plaintiffs have merged separate but related events into one alleged conspiracy in order to sustain the Court's jurisdiction. The record reveals that each plaintiff's allegedly wrongful removal from office occurred upon an investigation separate and apart from the charges and proceedings that led to their expulsions from the international union. Consequently, the Court must disengage what the plaintiffs have welded together.
A review of the pleadings reveals the following: Count I, a pendent State claim for defamation; Count II, dismissed, note 1, supra; Count III, a conspiracy to silence Mandaglio for having refused bribes and "hush" money; Count IV, a barely comprehensible conspiracy claim that reiterates most of Count I; and Count V, a conspiracy claim which repeats most of Counts I and III. The overlap of charges and defendants does not dissuade the Court from reviewing the matter according to the elements of the claims as created by the statute authorizing jurisdiction. In short, many of the allegations of the pleadings, as amplified by the affidavits and exhibits, are not relevant to what plaintiffs must demonstrate to obtain a judgment.

II.
29 U.S.C. § 411(a)(5) provides:
"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."
Mandaglio has submitted a lengthy affidavit in which he details activities of Theodore Maritas, the former district council president, and Joseph Lia, Maritas' alleged henchman. Maritas, acting through defendant LoCurto, a business agent, had asked both plaintiffs to accept money to overlook the use of non-union labor on construction projects in Local 385's territories in Manhattan and the Bronx. Both plaintiffs refused. During this period of 1977 and 1978, Mandaglio had other ongoing disputes with Maritas, whom he claims was eventually indicted in the Eastern District of New York for labor racketeering and extortion. Mandaglio was also assaulted and threatened; once by Maritas, who, on December 5, 1978, "took over" Local 385 by letter. Pursuant to the letter, LoCurto occupied the union office and informed those who called that Mandaglio had stolen and misappropriated the local's funds.[2]
Numerous communications followed between Mandaglio, the international union, *649 and Local 385's former attorney. They resulted in plaintiffs' suspensions from office and the imposition of a trusteeship and appointment of defendant Lia as supervising trustee on January 2, 1979. See generally Buffalow v. Bull, 619 S.W.2d 913 (Mo. App.1981). Mandaglio claims the hearing held January 15, 1979, which resulted in continuation of the trusteeship,[3] was permeated by "false and fabricated" testimony from defendants Mommanna, Svedese, Calciano, and LoCurto and by the absence of any documentary evidence to support allegations of misappropriations of funds. Thereafter, Lia defamed plaintiffs in Local 385 newsletters to the membership and rewarded each of his patsies with patronage. Mommanna became a shop steward, LoCurto became a business agent, Svedese, an alien unable to speak or understand English nor drive and in arrears in dues, was appointed financial secretary and business agent, assertedly contrary to the union constitution and bylaws, and Calciano, once disciplined for using his son's social security number to defraud the local's health and pension funds, became a business agent and assumed the local's presidency, again all contrary to the union's constitution and bylaws.
His stooges in place, Lia filed formal charges against plaintiffs in June 1979 and set trial for March 1980. Despite Mandaglio's pleas, the district council president, William Konyha, would not postpone the local's May 1980 meeting for nominations for the June 1980 election until after the trial committee rendered its verdict.
Mandaglio challenges the propriety of the hearing held March 17-21, 1980, alleging that Svedese had told a fellow local member, Pat Mirenda, that the outcome, a six-year suspension of both plaintiffs, was prearranged. Assertedly the trial committee refused Mirenda's testimony.[4] The committee in fact recommended expelling Mandaglio and barring Ferrara from office for five years.
Mandaglio adds that an FBI agent, Paul Hays, had informed him of the existence of a "contract" on his life and that both plaintiffs submitted documents, minutes of union meetings and exhibits, all of which proved their innocence of any wrongdoing. Further, he charges that subsequent levels of internal union review merely rubber stamped the perjury and injustice that had been committed at the hearing.
Mandaglio's allegations, if true, depict a corruption-infested union attempting to wrest the only two honest men in its ranks of their official positions of power and influence. However, plaintiffs' asserted ability, through their testimony and other evidence which was before the trial committee, to prove a plot to get them out of the way does not end the Court's inquiry. Even if there were a conspiracy as alleged, plaintiffs would still have to show that they were not served with written specific charges or that they were not given a reasonable opportunity to prepare their defenses, or that they were deprived of a full and fair hearing upon the charges which led to their expulsion. Undoubtedly, proof requiring exculpation as a matter of law would cast serious doubts upon the propriety of the hearing; however, no such proof is forthcoming, and plaintiffs' challenges to the asserted irregularities, even if proved, would not entitle them to a judgment.
A letter of October 14, 1978 from defendant Zeh to the international's president, William Sidell, had precipitated the international's investigation of local 385. In a later deposition Zeh testified that he had neither written, signed, nor authorized the letter. He thought its author was Louie Fiori, another local 385 member. The letter details but three alleged abuses, the mere tip of an iceberg. Mandaglio was found guilty of 21 of 37 charges and Ferrara, *650 14 of 14 charges.[5] On appeal the General Executive Board reduced the number of guilty charges to 12 and 7 respectively, which hardly constitutes a rubber stamp.
The General Executive Board sustained the trial committee's findings of guilty upon the following charges (Mandaglio):
1. From January, 1976 to January 3, 1979 you failed to meet your obligation under the General Constitution and Laws as President of Local Union 385.
3. You appointed yourself as Business Agent Pro-temp (sic) over objections of members and failed to hold an election for that office.
7. You imposed a five (5) cent per hour dues check-off without approval from the General Office as per the General Constitution and Laws on September 20, 1977.
12. On January 10, 1978 you promised to discontinue the local assessment as soon as the District Council assessments were approvedyou would terminate the other local assessment, yet you failed to do so.
15. On June 13, 1978 you read the resignation of Louis Fiori and appointed yourself as delegate to the District Council and appointed Charles Ferrara as Financial Secretary on June 7, 1978 without an election.
16. You failed to notify the members of a special election for delegates to the General Convention.
17. You fired Trustee Stephen Thornton illegally and appointed Frank Leanza as pro-temp (sic); also you appointed Douglas Mandaglio as Conductor who was not qualified to hold office. You appointed Patrick Mirenda as Warden when the minutes do not show a vacancy in that office by Frank Leanza.
18. You had three (3) cars leased in the name of Local Union 385 without proper approval of the membership in November, 1978.
21. You failed to pay the five (5) cent per hour assessment imposed on all members.
24. You cancelled the meeting on December 12, 1978 without authority or permission from the membership, leaving members standing outside the Union Hall.
25. You took loans against time certificates of the Local Union without approval of the membership.
(Ferrara):
2. You signed the leases for three (3) cars for Local Union 385 when they were not properly approved.
3. You kept from the General Office the amount you collected on the five (5) cent assessment per hour by keeping a separate record and keeping those records from the United Brotherhood of Carpenters.
6. You permitted yourself and some other officers to be exempt from payment of assessments which were imposed on all members.
7. Although the membership requested that the F.I.C.A. tax be paid by the employees, you continued to write checks which made the Local pay the employees' share of that tax.
10. You charged more for initiation fees than was permitted under the District Council By-Laws and approved Local Union By-Laws.
11. You charged more for contingent funds than was permitted under the By-Laws.
13. You issued a dues book for a non-union member for a job in Stamford, Connecticut without getting any money or having any records in Local Union 385; namely, for Nick "The Greek" Marikakis.
The Mandaglio charges, Nos. 7, 12, 15, 18, 21, and 24, and the Ferrara charges, Nos. 3, 6, and 13, meet the standard of *651 Gleason v. Chain Service Restaurant, 422 F.2d 342 (2d Cir.1970) (per curiam). Berg v. Watson, 417 F.Supp. 806, 810-11 (S.D.N. Y.1976) ("At a minimum the accused should be informed of the nature of the offense, the circumstances surrounding the alleged infraction and, as nearly as may reasonably be ascertained, the time and place of the occurrence.").[6]
The Court next turns to the sufficiency of the evidence. In his affidavit, para. 63, Mandaglio admits so much of charge 17 as concerns the improper appointment of his son but claims that the practice had been going on elsewhere for years and that it did not merit expulsion from the union. The Court may not, however, determine the scope of offenses for which a union may discipline its members. Boilermakers v. Hardeman, 401 U.S. 233, 244, 91 S.Ct. 609, 616, 28 L.Ed.2d 609 (1971). The affidavit also contests the findings upon charge 9; however, it, as apparently all the claims do, asks the Court to reweigh the evidence and rejudge the credibility of the witnesses.[7] The affidavit states that there was no documentary evidence of wrongdoing; it is silent upon the matter of testimony. When coupled with numerous and repetitive allegations of perjury and falsehood and fabrication, it becomes tantamount to an admission that there was evidence of guilt.
Upon the charges sustained by the General Executive Board, the trial committee found as herein related. The committee deemed charge 1 a form of catchall, a conclusion supported by the findings of guilt upon the other charges. The finding on charge 3 is supported by circumstantial evidence that Mandaglio appointed himself business representative pro-tem without following the constitutional guidelines. The minutes of the meeting of May 11, 1976 reflected the appointment but there was nothing anywhere to show that Mandaglio had availed himself of various formal procedures to extend the appointment beyond thirty days, the time limit suggested by a union member who spoke in opposition to the appointment at the meeting.
The committee relied upon the minutes of a September 13, 1977 meeting and a subsequent letter to the membership to sustain its finding that Mandaglio had imposed a special assessment, charge 7, in violation of the district council's directives and the union constitution. On charge 9, Mandaglio produced no evidence to show that, despite two references in the minutes to the F.I.C.A. matter, he ever did anything about it. On charge 12, the committee found that Mandaglio had promised, in a letter of September 20, 1977 to the membership, to discontinue a special assessment; however, he reneged because he later discovered that the district council would not be sending any additional funds. *652 On charge 15, the committee noted the conflict of proof over whether Fiori had actually resigned, but found no evidence that Mandaglio had ever held the constitutionally mandated special election to replace Fiori. Mandaglio may well have been guilty of expedience on charge 16 as the committee found evidence of a meeting at which he repeatedly requested nominations for delegates to the General Convention; but after receiving only three names for three spots, he ordered a unanimous ballot recorded without ever holding a vote. The minutes of the local's union meetings support the findings that Mandaglio made the appointments in charge 17, and the union's constitution contains provisions rendering such actions improper. Upon charge 18, the committee found approval for the lease of two automobiles, but chose not to credit Mandaglio's testimony that he had obtained prior approval for the third automobile. Mandaglio admitted charge 21. He also admitted charge 24 but explained that he had made every effort to inform the membership that the meeting, if desired, would be held in his office. The vice-president of the district council testified that there was no one outside the meeting hall instructing members to go to Mandaglio's office. Upon charge 25, the committee noted the conflict in testimony but found against Mandaglio.
With respect to Ferrara, charges 2, 3, 6, and 7 were covered by the aforementioned agreement, note 5, supra. Upon charge 10, he was adjudged guilty as an accessory because he had been a member of the local's executive board when the action was taken. There is no finding on charge 11, and the culpability upon charge 13 stemmed from Ferrara's having breached his responsibility for maintaining control over the issuance of dues books.
The standard of review requires the charging party to provide some evidence at the disciplinary hearing to support the charges made. Hardeman, supra, 401 U.S. at 246, 91 S.Ct. at 617. Under this standard, the Court may not reweigh the evidence nor judge the credibility of the witnesses. Id. That being the case, and there being adequate evidence, including admissions of the charges, the Court will now turn to the alleged procedural improprieties.[8]

III.
The March 1980 trial committee had recommended expulsion for Mandaglio and a five-year bar from holding office for Ferrara. Its report was not issued until after a meeting held in May 1980, to take nominations for election of Local 385 officers in June. After that meeting, and allegedly in continuance of the conspiracy, Lia filed two new charges:
"The above members of Local Union 385 took over the officer's chairs at approximately 6:30 PM at the meeting hall on Tuesday, May 13, 1980 and tried to take over the meeting [which had been specially called for nominations] at 7:00 PM. They refused to follow my instructions as Trustee and Supervisor of Local Union 385 and even lied to the police officers who had been called instating that they were the actual officers of the local union, when in reality, they had been fired on January 3, 1979.
"Further Dominick Mandaglio, Jr. had brought into the meeting room a person known as `Gregory Pistone' who sat next to him, and who is not a member of the United Brotherhood of Carpenters. This person has been known to be his `body guard' and refused to have him leave. He said that he personally initiated this man, yet there are no records in the files for such a man in Local Union 385. Then he sent me a telegram on May 14, 1980 stating that he would be in the office LU 385 at 11:00 AM on May 14, 1980 to take over that office without authority, which forced me to close the office for a couple *653 of days until I got the police all set to remove him if he showed up."
On December 22, 1980 trial was set for January 15, 1981 before a committee, which recommended expulsion for both plaintiffs.
With respect to the March 1980 hearing, the Court finds no procedural improprieties meriting a judgment in plaintiffs' favor. They have cited no authority which precludes the trial committee from having counsel and the bulk of their allegations claim that perjury and falsehood permeated the proceeding, thus making it incomplete and unfair. The Court has addressed these matters above.
Plaintiffs also contend that the committee should have disqualified itself when Mirenda's aforementioned hearsay about a "fix" was presented to it. If there was a fix, it would have occurred because the witnesses lied. Plaintiffs have produced nothing more than Mirenda's inadmissible double hearsay, his statement about what Svedese said that he, Svedese, knew, to demonstrate that the committee was tainted or biased. They have also shown no prejudice from the committee's asserted refusal to swear witnesses nor from the decision having been signed only by the chairman, see Smith v. General Truck Drivers, etc., 181 F.Supp. 14, 17 (S.D.Cal. 1960) (citations omitted) ("All that a union member is entitled to in any controversy between him and the union is a fair hearing. This means only that before any action is taken against him he must be informed of the charges and be given an opportunity to hear them and refute them."); accord Rosen v. Painters Union, 198 F.Supp. 46, 48 (S.D.N.Y.1961), appeal dismissed, 326 F.2d 400 (2d Cir.1964) (per curiam), nor from the failure to produce Zeh, the alleged accuser, as a witness, inasmuch as he would have produced nothing exculpatory or relevant. As it turned out, the bulk of the evidence and charges dealt with matters not contained in the letter Zeh denied writing. There has been no showing that either plaintiff was denied the opportunity to confront, cross-examine, or explain the evidence submitted upon the charges sustained on appeal to the General Executive Board. See Ritz v. O'Donnell, 566 F.2d 731, 736 (D.C.Cir.1977).
With respect to the January 15, 1981 hearing, the Court also finds no procedural irregularities meriting a judgment in plaintiffs' favor. Plaintiffs complain of the trial committee's refusal to grant a continuance because their counsel was previously engaged in a criminal matter. The committee denied the request because it was made on the day of trial even though counsel had been informed of the trial date more than two weeks prior thereto. The Court finds no impropriety here, in part, because neither plaintiff had a statutory or constitutional right to counsel at this hearing. Curtis v. Alliance of Theatrical State Employees, etc., 687 F.2d 1024, 1028 (7th Cir. 1982); Buresch v. I.B.E.W., Local 24, 343 F.Supp. 183, 191-92 (D.Md.1971) (discussion therein), aff'd, 460 F.2d 1405 (4th Cir. 1972). Moreover, the charges were not so complicated as to have required extensive investigation and preparation. Either plaintiffs were or were not present at the meeting and did or did not act as charged. If they did act as charged, and they do not deny that they did, the only issue is the legality of the imposition of the original trusteeship (their removals from office), a matter not subject to judicial review in this proceeding. 29 U.S.C. § 464, which authorizes judicial review of imposition of the trusteeship, Vars v. International Brotherhood of Boilermakers, etc., 204 F.Supp. 245, 247-48 (D.Conn.1962), aff'd, 320 F.2d 576 (2d Cir.1963), was not pleaded in the complaint, cf., id. at 248-49, nor is there pleaded any challenge to the propriety of the trusteeship.[9] Finally, there was no impropriety in having Lia, who filed the charges, also present evidence and testimony. Cornelio v. Carpenters Union, 243 F.Supp. 126, 128 (E.D.Pa.1965), aff'd, 358 F.2d 728 (3d Cir.1966), cert. denied, 386 *654 U.S. 975, 87 S.Ct. 1167, 18 L.Ed.2d 134 (1967).
The record reveals no genuine issues as to any of the material facts. The Court is not unsympathetic to the predicament which plaintiffs confronted. Viewed in the light most favorable to them, they sought to stem the tide of corruption; however, the corrupters threatened to raise as many improprieties as they could find, some of which might ordinarily have been overlooked given the plaintiffs' records of service to the organization. Nevertheless, the record reveals that plaintiffs had their day in court before the trial committees; consequently, the motives of their accusers are irrelevant. Rosario v. Dolgen, 441 F.Supp. 657, 682 (S.D.N.Y.1977), aff'd in part, rev'd in part, 605 F.2d 1228 (2d Cir.1979), cert. denied, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); Burke v. Boilermakers, 302 F.Supp. 1345, 1353 (N.D.Cal.1967), aff'd, 417 F.2d 1063 (9th Cir.1969) (per curiam). Accordingly, the remaining defendants are entitled to summary judgment upon Counts IV and V, which are ordered dismissed.[10]

IV.
Count III charges Maritas and Lia with having filed the charges as a subterfuge for their real motive of silencing plaintiffs' opposition to corruption and to prevent them from seeking office, all assertedly in violation of 29 U.S.C. § 529. Because the motives of the actors are relevant to a § 529 claim, Rosario v. Dolgen, supra, the Court is reluctant to grant summary judgment upon Count III. At best, plaintiffs must rely upon a confluence of circumstances to support their conspiracy charge against Lia and Maritas. The direct evidence of their admitted misconduct reflects adversely upon the potential success of this claim, so much so that their allegations barely rise above the level of a "suspicion" not meriting consideration by the trier of fact. See Gabauer v. Woodcock, 520 F.2d 1084, 1092-93 (8th Cir.1975), cert. denied, 423 U.S. 1061, 96 S.Ct. 800, 46 L.Ed.2d 653 (1976). But, to prevent the possibility that plaintiffs were expelled for protected dissent, see Brady v. Local 551, T.W.U., 439 F.Supp. 1190, 1196 (S.D.N.Y. 1977) ("However, it is apparent that a union may not effect a valid discharge on a proscribed basis under the guise of nonpayment of dues."), the Court denies the motion for summary judgment upon Count III.[11]
Count I, the State claim for defamation, falls along with Counts IV and V. As there is no merit to those counts, there can be no merit to it.
In summary, the defendants' motion for summary judgment is granted as to all defendants on Counts I, II, III (except as to defendants Maritas, Lia, and the district council), IV, and V.
SO ORDERED.
NOTES
[1] The rule is the law of the United States. Finnegan v. Leu, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). It compels dismissal of Count II, which relates solely to the removals from office.
[2] Maritas returned Mandaglio's credentials to settle an action Mandaglio brought in the Supreme Court of New York.
[3] The committee report of that hearing details Mandaglio's abuse of his power and position.
[4] The record contains an assortment of expressions, mostly hackneyed in nature, by Mandaglio's counsel that the committee, composed of three non-New Yorkers, would be fair and impartial.
[5] At the hearing, Ferrara had agreed that if Mandaglio was found guilty of ten of the charges, he was also guilty of those charges.
[6] The Court notes that, based upon the evidence, the other charges could have been amplified to meet the standard. Additionally, there was a specific finding upon each charge; thus, there is no problem that might be associated with a general verdict rendered upon inadequately pleaded charges. Pearl v. Tarantola, 361 F.Supp. 288, 294 (S.D.N.Y.1973).
[7] Mandaglio avers: that in his deposition, Mommanna contradicted his testimony to the trial committee concerning charges that Local 385 members were not allowed to speak freely at meetings; that he had an ongoing dispute with Maritas and Lia repeatedly warned him not to make waves about practices in the New York City area; and that Zeh, whose alleged signature on a letter allegedly putting the chain of events in motion, never testified before the trial committee, thus depriving him of his right to confront his accuser. Essentially, plaintiffs seek what they cannot have under the LMRDA, a trial de novo in court. Gulickson v. Forest, 290 F.Supp. 457, 464 (E.D.N.Y.1968). Moreover, upon several of the charges, plaintiffs furnish only protestations of their innocence, but no evidence nor explanation thereof compelling that conclusion. Thus, even if some of the charges were false and fabricated, in particular the three contained in the instigating letter, plaintiffs' records were not unimpeachable. The minutes of the union meeting show only that Local 385's executive board may have ratified Mandaglio's improper acts; however, it is not the function of this Court to determine what is and is not a violation of the union's constitution and bylaws. The Court must emphasize that under the LMRDA, it cannot interfere with a union's choice to discipline assertedly minor infractions of members who have contributed many years of loyal service.
[8] Ferrara's affidavit in opposition to the motion makes similar averments as Mandaglio's and he admits that he assisted Mandaglio.
[9] Plaintiffs claim that they have complaints pending with the Department of Labor. Their counsel avers that they never challenged the imposition of the trusteeship.
[10] By order of the Court of December 14, 1981, defendants Konyha and Sidell were dismissed for want of personal jurisdiction.
[11] The Court notes that because their expulsions were otherwise sustainable, plaintiffs would be entitled, at best, to nominal damages. See Feltington v. Moving Picture Machine Operators, 605 F.2d 1251, 1258 (2d Cir.1979), cert. denied, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980). Additionally, should there be a trial in this matter, the proof will be strictly limited to evidence related to the one remaining issue: whether Maritas and Lia conspired to rid the union of plaintiffs because plaintiffs opposed acts of corruption by Maritas.