William PERRY, as President and on behalf of Local 6, International Longshoremen's Association, AFL–CIO, an Unincorporated Association, Plaintiff,

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, an unincorporated Association and Thomas W. Gleason, Defendants.

LOCAL 945 INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Plaintiff,

v.

LOCAL 6, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, an unincorporated Association, Defendants.

Nos. 84 Civ. 4866 (RWS), 84 Civ. 4898 (RWS).

United States District Court, S.D. New York.

June 10, 1986.

Bornstein & Laufer, New York City (Jacob Laufer, Patricia M. Karish, of counsel), for plaintiff William Perry.

Thomas W. Gleason, New York City, for defendant and counterclaim defendant Intern. Longshoremen's Ass'n.

Leaf, Sternklar & Drogin, New York City (Ira Drogin, James S. Strauss, of counsel), for plaintiff Local 945.

SWEET, District Judge.

Defendants International Longshoremen's Association, AFL–CIO ("ILA") and Thomas W. Gleason ("Gleason") in these related actions have moved pursuant to Rule 56(b), Fed.R.Civ.P., for summary judgment dismissing the complaint in Case No. 84 Civ. 4866 ("Action No. 1") and dismissing the counterclaim in Case No. 84 Civ. 4898 ("Action No. 2") on the grounds that no material disputed issues of fact exist and that ILA and Gleason are entitled to judgment as a matter of law. Plaintiffs William Perry ("Perry") and Local 6, International Longshoremen's Association, AFL–CIO ("Local 6") have cross-moved for an order pursuant to Fed.R.Civ.P. 56 for partial summary judgment against the ILA and Gleason for certain breaches of the ILA Constitution and for violations of Federal Labor Statutes. Finally, Perry and Local 6 have moved to dismiss the complaint of plaintiff-counterclaim defendant Local 945, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, ("Local 945") in Action No. 2 on the grounds the claim is barred by the doctrine of *res judicata.* For the reasons set forth below, the ILA's motion for summary judgment in Action No. 1 and on the counterclaim in Action No. 2 is denied in part and granted in part, Local 6's cross-motion for summary judgment is granted in part and denied in part, and the motion for summary judgment in Action No. 2 is granted, as the Local 945's no-raid pact claims are barred by the doctrine of *res judicata.*

**Prior Proceedings**

On July 11, 1984, Local 945 filed Action No. 2 and moved by order to show cause before the Honorable Leonard B. Sand for an order temporarily restraining Local 6 from participating in the representation election of the Newark, New Jersey public works employees. After a hearing on July 12, 1984, Judge Sand denied the temporary restraint. On August 2, 1984, Perry and Local 6 moved for consolidation of Action No. 2 with Action No. 1 pending before this court. Actions 1 and 2 were thereafter consolidated for all purposes on August 24, 1984, and depositions in these actions have been conducted jointly. Oral argument on the instant motions was heard on March 14, 1986.

**Facts**

These related actions arise out of a dispute between Local 6 and its former international union, the ILA, and the presidents of both labor organizations. Local 6 was chartered by the ILA in 1972 under the name Local 1981 with a new charter issued in 1973 and was authorized to organize medical paraprofessionals and allied personnel who were without a valid labor union contract with employers located or represented in the United States. Prior to its affiliation with the ILA, Local 6 had organized employees in fields other than health care.

In 1982, Local 6 began a drive to organize seamen aboard Flag of Convenience ("FOC") vessels, or ships owned or chartered by United States companies but registered in foreign countries. Prior to 1982, many crew members aboard these vessels were represented by foreign labor organizations affiliated with the International Transport Workers Federation ("ITF"), an international federation of unions affiliated with the ILA. During the time period of these events, Gleason, ILA president, was an officer of the ITF. The ITF monitors or reviews the wages and working conditions of seamen on merchant fleets by issuing a "blue certificate" to vessels with collective

bargaining agreements which meet the ITF's employment standards.

In March, 1983, Local 6 and the ITF clashed over the organization of the OCEAN SKY, a vessel whose seamen were covered by a contract with Local 6. When the OCEAN SKY docked in Haifa, Israel, the ITF induced Israeli longshoremen not to service the vessel because, according to the ITF, the Local 6 contract was not in compliance with the ITF's wage and benefits scale. In response to this boycott, Local 6 instituted an antitrust action against the ITF, contending that members of the international maritime industry, including the ITF, the International Organization of Masters, Mates & Pilots ("MMP") and the National Maritime Union ("NMU") conspired to violated United States antitrust law. *William Perry as President of Local 6, ILA, AFL CIO v. International Transport Workers Federation et al.*, No. 83 Civ. 2059 (CES).

According to Local 6, both Gleason and the ILA knew of and acquiesced in Local 6's drive to organize foreign seamen and other employees outside the health care field. Perry claims that Gleason approved of his negotiations with Robert J. Lowen ("Lowen"), MMP president, to organize the FOC ships of the Standard Fruit Company Fleet, and never warned Local 6 that the ILA considered this activity to be outside Local 6's chartered jurisdiction. Gleason has denied acquiescence or approval of Local 6's organizing drives of FOC seamen. Indeed, Gleason contends that he warned Local 6 that such organizational activity would be a violation of Local 6's charter.

On May 15, 1984, William Hankard, Robert J. Lowen and Albert M. Cornette, ILA Vice-Presidents, filed disciplinary hearings against Perry and Local 6, charging that Local 6, *inter alia:* exceeded its jurisdiction by organizing foreign seamen, negotiated inferior contracts to those sanctioned by the ITF, misrepresented that its contracts had been issued blue certificates by the ITF, failed to file its collective bargaining agreements with the ILA, and subjected the ILA to disciplinary proceedings for failure to respect the representational rights of other AFL affiliates. Copies of these charges were forwarded to Perry and Local 6 on May 18, 1984, along with a notification that a committee would be appointed to conduct a hearing on these charges and would make recommendations to the ILA Executive Council. On July 18, 1984 the ILA Executive Council approved ILA Vice-President Benny Holland, Jr., ILA Vice-President Chauncey Baker, and ILA General Organizer Donald Carson as Chairmen to conduct these hearings on August 8, 1984. Although Perry and the ILA were advised of the hearing date and of their right to appear with counsel, produce witnesses and submit statements, Perry declined to appear, contending that the true purpose of the hearing was to cause Local 6 to withdraw its antitrust suit against the ITF and that their presence at the hearings would condone a biased and predetermined decision to sanction Local 6.

The committee concluded that Local 6 had exceded its jurisdiction, had entered into inferior contracts and had falsely represented that the ITF approved of its FOC vessel contracts. The committee recommended that Perry be expelled from the ILA and that Local 6's charter be revoked. On October 4, 1984, the ILA Executive Council convened in Bal Harbour, Florida, where the council unanimously adopted the committee's conclusions and expelled Perry and Local 6 from the ILA. Among those Executive Council members who voted to expel Local 6 from the ILA were Robert Lowen and Albert Cornette, two of the three ILA members who filed the original charges, and Gleason, ILA President. The ILA Executive Council informed Perry by letter of October 9, 1984 that the Local's charter had been revoked and that Perry was expelled from the ILA and informed the Local that it had the right to appeal this decision within thirty days to the ILA convention, which was to convene in July, 1986. No appeal was filed.

The second dispute, at the core of Action No. 2, concerns Local 6's attempt to organize the approximately 400 "blue collar"

workers or sanitation employees of the City of Newark, New Jersey, who had been represented by Local 945 ("Local 945") of the International Brotherhood of Teamsters ("IBT") since 1971. Local 945 is a member of the Joint Council No. 73, an affiliate of the IBT. On April 13, 1984, Local 6 filed a representation petition with the New Jersey Public Employment Relations Commission ("N.J.P.E.R.C.") seeking to become the certified bargaining representative for the sanitation workers upon the expiration of the collective bargaining agreement between Local 945 and the blue collar workers. Local 945 intervened in the proceeding to oppose the certification of Local 6, and Joel G. Scharff ("Scharff), the N.J.P.E.R.C. Administrator of Representation Proceedings conducted an administrative investigation concerning Local 6's petition and called a conference of interested parties where each submitted a written statement. Local 945 contended that a successor written agreement between Local 945 and the sanitation employees was a "contract bar" to Local 6's certification. On May 24, 1984, Scharff preliminarily concluded that this agreement was not truly negotiated and was not a contract bar but permitted both Locals to submit additional evidence on the question. On June 6, 1984, Scharff issued an opinion which concluded that Local 6 was not barred from representing these employees, and he directed a representation election.

By letter of June 25, 1984, Gleason, on behalf of the ILA, informed Scharff that Local 6's drive to organize New Jersey workers violated an oral "no-raid" pact pursuant to which the IBT and the ILA agreed to refrain from seeking to represent workers already organized by either union. In reliance on this letter, Flen Chestnut ("Chestnut") president of Local 945, filed a request for review and for extraordinary relief with the N.J.P.E.R.C., asserting this twenty-year no-raid pact as a bar to Local 6's representation petition. This request for review was denied on July 10, 1984.

On July 11, 1984, Local 945 commenced Action No. 2 and moved by order to show cause before the Honorable Leonard B. Sand for an order enjoining the Newark blue collar workers representation election scheduled for July 13, 1984. This application for an injunction was denied, and Local 6 was certified as the certified bargaining representative for these employees on August 7, 1984.

### Action Number 1

In Action Number 1, Perry and Local 6 contend that the ILA breached its constitutional and fiduciary obligations towards Local 6 and tortiously interfered with Local 6's state law rights by interfering with the Local's attempt to organize FOC vessel seamen and New Jersey Sanitation Workers. Perry also contends that Local 6 was improperly expelled from ILA affiliation, in violation of the ILA constitution and the Free Speech and Fair Hearing provisions of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. 401 *et seq.* The ILA contends that on undisputed facts, it is entitled to judgment as a matter of law, as the ILA did not breach its constitutional or fiduciary duties and the ILA properly disciplined Local 6 and Perry.

Perry and Local 6 have cross-moved for partial summary judgment on two aspects of its claims, one based on the ILA constitution, Articles XXIII, section 4, pertaining to employee wage scales, and the other based on the failure to provide a full and fair hearing on an internal union dispute as guaranteed in the ILA Constitution, Article XVIII, Section 4, and in section 101(a)(5)(C) of the LMRDA, 29 U.S.C. § 411(a)(5)(C).

In evaluating these cross-motions, this court takes heed that in the Second Circuit, summary judgment is not lightly granted, as it deprives the non-moving party of the opportunity for full factual development of the record through trial. *See Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir. 1975). A motion for summary judgment may not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy, and establishes affirmatively that the adverse party cannot prevail under any circumstances", *Heyman v. Commerce and*

*Industry Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975). All inferences will be drawn in favor of the party opposing the motion, *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*).

### Charter Jurisdiction

■ The ILA contends that it is entitled to prevail as a matter of law on Local 6's claim that the International breached its constitutional obligations by interfering with Local 6 organizational drives. In a blanket invocation of the International's right to structure its internal affairs free from interference, the ILA contends that any "reasonable" construction of its authority over the jurisdiction of Local 6, its power to discipline errant officers or locals, and its review of wage scales is entitled to complete deference by this court. Such an interpretation of this court's scope of review would, however, erase the jurisdictional grant in section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), which vests this court with jurisdiction over disputes between a local union and its parent international union where it is alleged that one party has violated the international's constitution. *United Association of Journeymen v. Local 334, United Association of Journeymen, etc.,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981); *Local 644, International Photographers of Motion Picture Industry v. International Alliance of Theatrical Stage Employees,* 563 F.Supp. 1334 (S.D.N.Y.1983).

■ While Article XII of the ILA constitution grants the ILA the authority to charter affiliated locals and determine the scope of the local's organizing drives, this authority does not preclude the court from examining the serious factual disputes which Perry and Local 6 have raised concerning the jurisdictional limits contained in the Local 6 charter. For example, Perry contends that Gleason and the ILA have had a past practice of permitting locals to continue to represent employees literally outside the confines of a local's jurisdictional grant, a contention not addressed by the ILA. Local 6 has produced documentary evidence that Gleason was aware of at least one Local 6's organizing drives which sought to organize clerical employees of the Bank of India, clearly employees outside the health care industry.

■ Furthermore, the Perry and Gleason affidavits are at odds on the issue of Local 6's drive to organize the FOC vessel seamen, Perry contending that Gleason supported and encouraged the organization of these employees until he was reprimanded by the president of the ITF, and Gleason claiming that although he "bailed out" the local on three occasions, he warned Perry not to exceed Local 6's jurisdictional limits by organizing foreign seamen. Robert Lowen, charging party, MMP vice-president and ILA affiliate, admitted that he intended to assist Local 6 in its organizing drive on FOC vessels.

This outline of an estoppel defense against what Local 6 characterizes as the ILA's opportunistic and selective invocation of jurisdictional limits raises a sufficient factual dispute to preclude summary judgment on this issue, particularly in light of the ILA's failure to address these estoppel claims. *International Union, Allied Industrial Workers of America v. Local Union No. 589, Allied Indus. Workers of America,* 693 F.2d 666, 673–74 (7th Cir. 1982) (Union's acquiescence in defendant's failure to submit reports cannot be invoked suddenly as the basis for imposition of a trusteeship); *Retail, Wholesale, Dept. Store Union, AFL–CIO–CLC v. Nat. Union of Hospital & Health Care Employees,* 577 F.Supp. 29, 33 (S.D.N.Y.1983).

### Wage Scale Provisions

■ Perry and Local 6 also claim that the ILA violated its constitution by disciplining the Local for negotiating contracts allegedly inferior to those granted an ITF "blue certificate." Article XXIII, section 4 of the ILA constitution provides:

A local Union may fix its own wage scale, unless such scale adversely affects other Locals or Branches in the trade.

ILA contends that this wage scale provision does not authorize Local 6 to negotiate "obviously inferior" contracts, that the provision is specifically limited by the condition that these scales do not adversely affect other "branches" (in this instance the ITF) and that the general supervisory authority of the International is superior to the Local's right to fix its own wage scale. Local 6 contends that it is entitled to summary judgment on the wage scale issue, as this provision of the constitution explicitly grants Local authority in the fixing of wage scales, and the International has no power to ratify or veto a wage provision or collective bargaining agreement. According to Local 6, the ILA has not "adduced any evidentiary matter regarding interpretation of the constitution that would offset the lack of a specific limitation disclosed by the language of the Constitution itself." *Operative Plasterers' and Cement Masons v. Metropolitan New York Dry Wall Contractors Ass'n.*, 543 F.Supp. 301, 311 (E.D.N.Y.1982).

Summary judgment is an inappropriate resolution for this dispute surrounding an ambiguous contract term. Neither party has offered evidence of past practices surrounding the use of this wage provision, or the customary role of the ILA International in monitoring "adverse effects" of wage provisions on other locals or branches. Furthermore, the understanding of whether "branches" is at issue, whether or not properly refers to a dispute between an ILA local and the ITF, of which the ILA International is an affiliate. Under these circumstances the court cannot apply the rigorous summary judgment standards to the sketchy facts at hand. *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 9 (2d Cir.1983) (where contract language is susceptible of two fairly reasonable meanings, the parties have the right to present extrinsic evidence of their intent at the time of contracting, and summary judgment is improper). *Home Insurance v. Aetna Casualty & Surety Co.*, 528 F.2d 1388, 1390 (2d Cir.1976); *Heyman v. Commerce and Industry Co., supra*, 524 F.2d at 1320.

### Full and Fair Hearing

Both the ILA and Local 6 contend that they are entitled to summary judgment on Local 6's claim that the disciplinary proceedings against Perry and Local 6 violated the right to a "full and fair hearing" provided by Article XVIII, section 4 of the ILA constitution, and section 101(a)(5)(C) of the LMRDA, 29 U.S.C. § 411(a)(5)(C). According to the ILA, the Executive Council demonstrated that it had "some evidence" to uphold the validity of its disciplinary action against the Local, as the Local's attempt to organize foreign seamen was outside its chartered jurisdiction, and the wage contracts were clearly inferior to those sanctioned by the ITF, a "branch" affected by Local 6's inferior wage deals. The ILA contends that this showing entitles the Executive Council's decision to presumptive validity and non-interference from the court, relying on the Supreme Court's opinion in *International Broth. of Boilermakers v. Hardeman*, 401 U.S. 233, 245, 91 S.Ct. 609, 616–17, 28 L.Ed.2d 10 (1971) and *Wirtz v. Local 153, Glass Bottle Blowers Ass'n.*, 389 U.S. 463, 471, 88 S.Ct. 643, 648, 19 L.Ed.2d 705 (1968) (long standing policy against governmental intrusion into internal union affairs).

The ILA's use of *Hardeman* in this context is, however, both excessively broad and inapposite to several of Local 6's claims which implicate the absence of a full and fair hearing. First, *Hardeman* concerned the appropriate standard of review for evaluating an allegation that expulsion from a union was unlawful under § 101(a)(5)(C), and did not concern a claim that the union international had breached its contract with the union local, a claim asserted under § 301(a) of the LMRA, 29 U.S.C. § 185(a). As three of Local 6's claims concern alleged breaches of the ILA constitution, the *Hardeman* standard of review is inapplicable. Second, while *Hardeman* stands for the proposition that courts reviewing union disciplinary proceedings should not determine the scope of offenses for which a union may discipline its members, *id.* 401 U.S. at 244–45, 91

S.Ct. at 616–17, it does not preclude this court from examining the proceeding for bias or prejudice, as the *Hardeman* court was applying the "some evidence" standard to an evaluation of whether the charging parties had provided any evidence to substantially support conviction, rather than using the existence of "some evidence" to preclude a challenge to the essential fairness of and motivation for the proceedings. *Id.* at 246, 91 S.Ct. at 617. *See also Goodman v. Laborers International Union of North America,* 742 F.2d 780, 783 (3d Cir. 1984).

Both the relevant judicial authority and the facts surrounding the decision of the Executive Council indicate that irregularities in the proceedings are sufficient to require the granting of summary judgment in favor of Local 6 on the ILA's breach of Article XVIII, section 4, and breach of the full and fair hearing requirements in section 101(a)(5)(C) of the LMRDA.

■ The facts which demonstrate a breach of the union constitution are undisputed. Article XVIII, section 4, explicitly prohibits a charging party from sitting on the executive board hearing the controversy. It provides in relevant part:

> In any case where the accused or the accuser is a member of the Local Executive Board, the District Council, the District Organization or its Executive Board, or the Executive Council, whichever such body may be hearing the case, the accused or the accuser *shall not sit* on such Board or Council and the remaining members of such Board or Council shall have the power to act.

Article XVIII, section 4, (emphasis added).

Here two of the charging parties, Robert Lowen and Albert Cornette, instituted the charges against Local 6 and Perry and sat on the Executive Council which unanimously decided to expel Perry and revoke Local 6's charter, in disregard of these explicit constitutional limitations. Indeed, the third of the three charging parties, William Hankard, was scheduled to sit on the Executive Council but failed to appear because of illness. While the ILA argues that the participation of two of the charging parties in the unanimous determination of expulsion was irrelevant to the proceedings, section 4 does not contain a proviso which restricts its force to instances when the participation of charging parties is outcome determinative.

■ Local 6 has also produced sufficient evidence to show that ILA has breached the fair hearing requirements of LMRDA § 101(a)(5)(C) entitling Local 6 to summary judgment on this issue and a remand for a trial before an ILA tribunal which meets the due process concerns set forth below. While reviewing courts should not second-guess a union's determination of the scope of punishable offenses under its constitution, *see Intl. Broth. of Boilermakers v. Hardeman, supra,* reviewing courts are empowered to evaluate union disciplinary proceedings against traditional due process notions of a "full and fair" hearing, including the right to be (a) served with specific written charges (b) given a reasonable time to prepare a defense and (c) afforded a full and fair hearing. *Semancik v. United Mine Workers,* 466 F.2d 144, 152 (3d Cir. 1972); *Goodman v. Laborers' International Union of North America, supra,* 742 F.2d 780 (3d Cir.1984). This inquiry has expanded beyond these facial indicia of procedural fairness to include a determination of whether the members of the tribunal prejudged the guilt of the accused and whether the discipline was merely a pretext for general political retaliation or retaliation for a member's exercise of protected Title I rights. *Id.* at 784; *see also Loekle v. Hansen,* 551 F.Supp. 74, 82–83 (S.D.N.Y. 1982).

Local 6 has demonstrated that by virtue of the participation of two of the original charging parties and President Gleason on the Executive Council determining Perry's fate, several members of the Council had prejudged the outcome of the trial, violating the standards for a full and fair hearing required by this and other Circuits. As the Second Circuit stated in *Rosario v. Amalgamated Ladies Garment Cutter's Union,* 605 F.2d 1228 (2d Cir.1979), *cert.*

*denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980), holding that a union may not allow a member of a tribunal which has convicted a union member to participate in the retrial of the same charges:

> It cannot be denied that in a literal sense the members of the second tribunal, having found the accused guilty of the identical charges, have "prejudged" his guilt.
>
> .      .      .      .      .
>
> The most compelling distinction, however, is that the judicial and administrative processes insist with much greater rigor than does intra-union disciplinary process upon the detachment of the adjudications from the prosecutors. When Union Officials or members sympathetic to their continued tenure and interest in maintaining the status quo sit in judgment upon charges arising out of internal political differences, brought by a fellow official against a member who is critical of their policies, the atmosphere is hardly conducive to impartial resolution of the issues ...
>
> *This danger is compounded when the officials have previously adjudicated the charges.*

*Id.* at 1243 (footnotes omitted) (emphasis supplied).

Here there is no speculative "danger" that there is prejudgment fatal to the hearing's fairness; it is an established fact that at least three members of the Executive Council had made written statements of their belief in Perry and Local 6's guilt. Lowen and Cornette were the authors of the charges and set out their belief in Perry's guilt prior to the convening of the disciplinary committee. As the Second Circuit stated in *Feltington v. Moving Picture Machine Operators Union Local 306,* 605 F.2d 1251 (2d Cir.1979), *cert. denied,* 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980) prohibiting the retrial of a union member before a tribunal which previously convicted him, "the risk is too high that individuals who have heard and decided a case will not consider the evidence with an open mind a second time." *Id.* at 1256.

This is all the more poignant in the case at bar, where Lowen and Cornette had no "open mind" the first time. *See also Falcone v. Dantinne,* 420 F.2d 1157, 1163 (3d Cir.1969) ("[W]e need go no further than to find evidence to support the charge that *one* member of the trial body had prejudged the case in order to conclude that the hearing violated the Act.")

Furthermore, Local 6 has produced letters from Gleason to Perry stating Gleason's view that Local 6's actions violated its jurisdictional charter, an "actual expression of an opinion on the merits of the trial by a member of a tribunal before the trial" which constitutes impermissible bias under § 101(a)(5)(C), *Goodman v. Laborers International of North America, supra,* 742 F.2d at 784; *Loekle v. Hanson, supra,* 551 F.Supp. at 83. These instances of prejudgment require that Perry's expulsion and the revocation of Local 6's charter be vacated, and the issues remanded for an impartial hearing.

While this court rests on the clear prejudgment of the merits by certain Executive Council members, Local 6 has raised several other impartiality concerns which decrease the likelihood that Perry and Local 6 were given a full and fair hearing. Courts have been reluctant to rule that personal bias or political enmity alone renders a hearing unfair, *Goodman v. Laborers International, supra,* 742 F.2d 780, 784, however, it is well established that charges motivated by a desire to retaliate for a member's exercise of protected Title I political speech rights violate the full and fair hearing requirements of section 101(a)(5)(C). *Bradford v. Textile Workers of America,* 563 F.2d 1138, 1143 (4th Cir. 1977) (under the LMRDA, if a violation of a statutory right is a cause of discipline, the discipline is illegal even if the violation is not the "primary" cause of the discipline); *Mandaglio v. United Brotherhood of Carpenters and Joiners,* 575 F.Supp. 646, 654 (E.D.N.Y.1983).

■   In this regard, Local 6 has also offered some evidence to support the possibility that the ILA disciplined Local 6 in retal-

iation for the antitrust suit which it commenced against the ITF, in violation of LMRDA sections 101(a)(4) and 609, 29 U.S.C. §§ 411(a)(4) and 529, which combine to prohibit union officials from disciplining or expelling any union member for exercising the right to sue granted by Section 101(a)(4) of the LMRDA. According to Perry, the original charges contain what the ILA terms "passing references" to the pending antitrust action, namely a request by the charging parties that Local 6 be required "to refrain from all further ... legal attacks upon labor organizations affiliated or alligned with the AFL–CIO." The disciplinary report also contained a reference to the antitrust action but the committee recommended that no action be taken with reference to this charge.

The ILA responds that it has done nothing to "interfere" with the antitrust action, which is currently pending in this district, and that in any case the Executive Council's decision was based on proper grounds, namely the jurisdictional and wage scale disputes. However, the fact that the instant Executive Council discipline was not explicitly labeled retaliation for Perry's suit against the ITF would not have precluded Local 6 from demonstrating that improper retaliation was a motive for the expulsion. *Lamb v. Miller*, 660 F.2d 792, 794 (D.C.Cir. 1981); *Mandaglio v. United Broth. of Carpenters and Joiners of America, supra*, 575 F.Supp. at 654.

Finally, Local 6 charges that the fairness of the hearing was tainted by the fact that it was composed of members, Gleason most pointedly, who had been political opponents of Perry's and whose policies he had attacked prior to the leveling of charges against him. Political bias present at the hearing has also served to invalidate disciplinary proceedings as violative of section 101(a)(5)(C). For example in the landmark case of *Semancik v. United Mine Workers of America, supra*, 466 F.2d at 157, the Third Circuit held that a union tribunal may not be comprised of the political opponents of those on trial who had opposed the incumbent union leadership. Similarly in *Tincher v. Piasecki*, 520 F.2d 851, 855 (7th

Cir.1975) the Seventh Circuit held that it is inherently improper for a person who had been charged by an accused in a collateral proceeding to participate as a committee member in the accused's disciplinary hearing, quoting the Supreme Court's opinion in *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) for the proposition that an adjudicator with a pecuniary interest in the outcome and who has been the target of personal abuse or criticism has too high a probability of actual bias to be constitutionally tolerated. *Id.* at 855.

Local 6 has also presented some evidence that Gleason and Lowen were political opponents of Perry's and that both hoped to eliminate Perry and Local 6 for political and financial gain. First, Harold Lewis, general secretary of the ITF, encouraged the ILA to disassociate itself from Local 6's activities with FOC vessel employees, a move which Local 6 asserts was necessary to help Gleason assume the presidency of the ITF. Lowen's equivocal deposition testimony regarding his understanding of the nature and source of the charges against Perry raise an issue as to whether Lowen might have rubber-stamped charges promoted from within the administration ranks. Lowen also admitted to negotiating with Local 6 on behalf of the MMP to jointly organize the personnel on FOC ships, and to being angry with Perry for later excluding him from this project. Finally, both Gleason and Lowen were implicated directly or indirectly in Perry's "collateral" antitrust suit against the ITF which is still pending in the Southern District of New York.

The clear prejudgment of the issues presented in the disciplinary hearing as indicated by the undisputed facts, warrants the granting of summary judgment on Local 6 and Perry's behalf on the absence of a full and fair hearing without the need to resolve the doubts which Local 6 has cast on the impartiality of the hearings in several other respects.

*Exhaustion*

■ The ILA has also asserted that Local 6 has failed to exhaust internal union

remedies under the ILA constitution. Plaintiffs must exhaust internal union administrative remedies prior to commencing a court action for breach of contract under the LMRA, *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), and Article XIX, section 5, which incorporates this exhaustion requirement, states:

> No member or Local Union shall institute any civil action, suit, or proceeding in any court against the ILA, or any of its Local Unions, or District Council or District Organization, or any officer or member of the ILA or any of its Local Unions or District Council or District Organization on account of any controversy for which a remedy by trial or appeal is provided for in this Constitution, unless he has first exhausted all such remedies of trial and appeal. The prohibition contained therein shall not extend beyond four (4) months from the date that a member or Local Union initiates a controversy by filing with the proper individual.

As there are no internal mechanisms by which a local can file a grievance against the ILA International for violations of the ILA constitution, the court must determine the propriety of requiring Local 6 to appeal the decision of the Executive Council to the ILA convention pursuant to Article XIX, section 1(f). It is well settled that requiring exhaustion of internal administrative processes is in the discretion of the trial judge, *Giordani v. Upholsterers Intern. Union of North America,* 403 F.2d 85 (2d Cir.1968); *Pearl v. Tarantola,* 361 F.Supp. 288, 292 (S.D.N.Y.1973) and plaintiffs who have demonstrated that appellate review would be futile in the face of existing bias at the appellate level have been excused from exhaustion of these internal appeals. *Johnson v. General Motors,* 641 F.2d 1075 (2d Cir.1981).

Here, Perry and Local 6 maintain that requiring exhaustion would be contrary to the principle of speedy resolution of internal union disputes reflected in the four month limitation contained in both Article XIX, section 5 of the ILA constitution and in § 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), held equally applicable to actions arising under § 301 of the LMRA. *See Operative Plasterers' v. Metropolitan New York Dry Wall, supra,* 543 F.Supp. at 310.

▪ It is undisputed that the Executive Council's decision to revoke Local 6's charter and to expel Perry from the ILA occurred on October 4, 1984, almost two years before the next scheduled meeting of the ILA convention in July, 1986, the sole avenue for an appeal of this determination. Such a delay is antithetical to the four-month guideline established by the ILA constitution and in the LMRDA, and courts have not hesitated to excuse compliance with an appeal procedure in similar delays. *Local Union 1219, United Brotherhood of Carpenters and Joiners of America v. United Brotherhood of Carpenters and Joiners of America,* 493 F.2d 93, 95 (1st Cir.1974) (three year delay before convention); *Truck Drivers, Chauffeurs and Helpers Union, Local 42 v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 482 F.Supp. 266, 272 (D.Mass.1979) (four year delay before convention); *Operative Plasterers v. Metropolitan New York Dry Wall Contractors A'ssn., Inc., supra,* 543 F.Supp. at 310 (two year delay in exhaustion of internal remedies). In light of this inordinate two-year delay, the endorsement of a four month goal for the resolution of internal union disputes in the ILA constitution and the charges of retaliatory motives or bias on the part of the disciplinary committee and the Executive Council, a prompt judicial resolution at this stage is preferable to the imposition of an exhaustion barrier.

### Fiduciary Duty

▪ In the second amended verified complaint, Local 6 and Perry charge that Gleason and the ILA have breached their fiduciary duty to Local 6 by, *inter alia,* wrongfully disciplining the Local for organizing the FOC vessel seamen and the New Jersey Blue Collar Workers. To the extent

that these charges are based on a violation of the LMRDA's fiduciary duty provisions, 29 U.S.C. § 501, rather than on a violation of the fiduciary duty sections of the ILA constitution and by-laws (second amended complaint ¶ 13), they are legally insufficient. Putting aside any exhaustion requirement in § 501(b), the Second Circuit has determined that section 501 applies only to charges of financial irresponsibility or self-dealing. *Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir.1964); *see also Head v. B.R.A.C.*, 512 F.2d 398 (2d Cir.1975). The ILA is therefore entitled to judgment dismissing this aspect of Local 6's fiduciary duty claim.

### Action Number 2

Local 945 has alleged in Action No. 2 that Local 6 and Perry violated an alleged oral no-raid pact between the ILA and Local 945's parent organization, Joint Council 73 of the IBT by organizing the Newark "blue collar" workers previously represented by Local 945. Local 6 has lodged a counter-claim in Action No. 2 which alleges that Local 945 conspired with the ILA to obstruct Local 6's organizing efforts, in violation of the ILA constitution and other relevant statutes. According to Local 6, it is entitled to summary judgment on Local 945's no-raid pact claim, as these claims are barred by principles of *res judicata*.

■ The Second Circuit standards for the application of *res judicata* are well-established:

> [A] valid, final judgment on the merits is a bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand ... Such a judgment precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first action and of issues that could have been raised in the adjudication of that claim.

*N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983) (citations omitted). Identical parties who seek to raise issues which have been previously determined or which could have been raised in a prior adjudication where the parties had an adequate opportunity to litigate are barred from relitigating those issues, regardless of whether the prior adjudication occurred before a court or an administrative agency. *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 86 S.Ct. 1545 (1966); *Wickham Contracting Co. Inc. v. Board of Education of the City of New York*, 715 F.2d 21, 26 (2d Cir.1983).

While there is little disagreement concerning the facts of the prior adjudication before the N.J.P.E.R.C., the parties have different interpretations as to the significance of these events. Local 945 intervened to oppose a representation petition filed by Local 6 with the N.J.P.E.R.C. and rested its opposition on the existence of a "contract bar" to Local 6's representation of the workers. Scharff, the administrator of representation proceedings, came to the preliminary conclusion that the contract in question could not operate to bar Local 6's petition, but offered Local 945 and Local 6 the opportunity to submit additional material on these issues, which they did. However, Local 945 never raised the issue of an alleged no-raid pact in any of its oral or written submissions. When Gleason invoked the no-raid pact in his letter to the N.J.P.E.R.C., Local 945 requested a review of Scharff's decision on the representation petition. This request was denied, and Local 945 commenced this action.

According to Local 6, this sequence of events demonstrates that Local 945 had two opportunities to raise this no-raid pact before the N.J.P.E.R.C. but failed to do so, and was denied a third opportunity to reopen the issue after Scharff's decision, barring this action in federal court. It is well settled that *res judicata* principles bar the relitigation of issues arising from the same operative facts which could have been raised at a prior adjudication, and not merely those which were fully litigated below. *N.L.R.B. v. United Technologies Corporation, supra*, 706 F.2d at 1259; *Rx Data Corp. v. Department of Social Services*, 684 F.2d 192, 198 (2d Cir.1982).

In opposition, Local 945 claims that the parties and issues before the N.J.P.E.R.C. were not identical to those asserted in the federal action, and that the existence of the no-raid pact was "newly discovered" evidence which Local 945 could not have raised before the administrative tribunal. These defenses are meritless. First, the issue before this court, whether Local 6 breached an alleged no-raid pact between the ILA and the IBT, Joint Council 73, was precisely the issue which Local 945 belatedly asserted as a ground for reopening the determination of the N.J.P.E.R.C., and which is reasserted here. This court and the N.J.P.E.R.C. were put to the identical task of determining whether Local 6 should be required to withdraw its representation petition or be enjoined from organizing the New Jersey "blue collar" workers. Thus Local 6 has conclusively demonstrated that these causes of action have met the Second Circuit's criteria for the identity of claims, namely:

> [W]hether a different judgment in the second action would impair or destroy rights or interests established in the first action, whether the same evidence is necessary to maintain the second cause of action as was required in the first, and whether the essential facts and issues in the second were present in the first.

*Herendeen v. Champion International Corp.*, 525 F.2d 130, 133–34 (2d Cir.1975) (footnotes omitted). Local 945's attempt to distinguish the "representation" issue below as a cause of action distinct from the breach of the no-raid pact asserted here is therefore of no avail. The relief sought and the purpose of both proceedings was identical—to prevent Local 6 from becoming the certified bargaining representative of the Newark Sanitation employees. *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977) (the facts surrounding the transaction or occurrence constitute the cause of action not the legal theory upon which the litigant relies).

Despite Local 945's insistence that a claim for damages for an alleged breach of an agreement not to raid another Teamster and an injunction against such representation is different from an action needed to defeat the representation petition of N.J.P.E.R.C., this is merely a new theory of damage recovery based on the same allegations which will not preclude the operation of *res judicata, Herendeen v. Champion International Corp., supra,* 525 F.2d at 134, *citing* Restatement of Judgments § 63 (1942). Similarly, the fact that Local 945 was designated as an "intervenor" in the administrative proceeding rather than a party to the N.J.P.E.R.C. action is irrelevant, as the posture of the parties was obviously adversarial and was recognized as such by the administrator for representation proceedings.

Finally, Local 945 cannot rely on any assertion that the existence of the oral no-raid pact was "newly discovered" evidence which they did not have the opportunity to present to the administrative tribunal while claiming that this pact has been in existence for twenty years, and that Local 945, as a member of Joint Council 73, has been a party to this agreement during that time. While one might quarrel with the harshness of a *res judicata* bar to a claim which could have been but was not raised in a prior proceeding, one cannot quarrel with its appropriateness in these circumstances. Local 945's claims based upon an alleged breach of the no-raid pact are therefore dismissed.

To summarize, in action No. 1, ILA and Gleason's motion for summary judgment is denied except with respect to Local 6's claim for breach of fiduciary duty pursuant to 29 U.S.C. § 501. Perry and Local 6's cross-motion for summary judgment against the ILA and Gleason is denied in all respects, apart from the granting of summary judgment on the breach of the fair hearing requirements contained in the ILA constitution, Article XVII, section 4, and in the LMRDA, Section 101(a)(5)(C). In Action No. 2, defendant Local 6's motion for summary judgment on Local 945's no-raid pact claims is granted, as those claims are barred by the doctrine of *res judicata.*

**IT IS SO ORDERED.**